UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ATILA BATURGIL,

                          Plaintiffs,

           - against -

THE NATIONAL CREDIT UNION
ADMINISTRATION, *and as successor in
interest to* MELROSE CREDIT UNION,

                          Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-cv-2964 (BMC)

**COGAN**, District Judge.

Plaintiff Atila Baturgil seeks to have defendant, National Credit Union Administration ("NCUA"), comply with a State Court judgment giving him the balance of an account at Melrose Credit Union. This balance was not released to plaintiff because NCUA placed Melrose into involuntary liquidation and determined Baturgil "was not on record as a member of the credit union with ownership in a share account, and there were no insured funds in [the account]." NCUA has moved to dismiss this action because it was filed outside of the statute of limitations. For the reasons outlined below, the Court grants defendant's motion.

**SUMMARY OF COMPLAINT**[1]

Plaintiff's father opened the share account at issue with Melrose on November 7, 2012, and named plaintiff as the beneficiary.[2] Thirteen days later, plaintiff's father used his taxi

---

[1] The complaint annexes several of the operative documents between the parties, and this summary is taken from the complaint and its exhibits.

[2] Unlike banks, depositors in a credit union receive shares in the credit union equivalent to the value of their deposit. See Michell Grant, Credit Union, Investopedia, Feb. 24, 2021, https://www.investopedia.com/terms/c/creditunion.asp. Banks generally have specified limits of insurance protecting these deposits, known as "deposit insurance," guaranteed by the Federal Deposit Insurance Corporation.

medallion, valued (at the time) at $400,000, to secure a $287,454 loan (the "medallion loan") from Melrose. Pursuant to that loan, plaintiff's father signed a three-year promissory note. On November 20, 2015, the medallion loan came due but was not paid. Plaintiff's father died approximately six months later.

On February 10, 2017, NCUA placed Melrose into conservatorship because it was undercapitalized. Sometime between March and April of that year, plaintiff requested that Melrose pay him the value of the shares in his father's account – $ 66,422.42. Melrose denied this request, stating that it had offset the balance in the account against plaintiff's father's medallion loan.

On May 3, 2017, Melrose sued plaintiff's father's estate in New York state court seeking repayment of the outstanding balance of the medallion loan. On June 1, 2019, Melrose obtained summary judgment in its favor. On August 8, 2017, plaintiff sued Melrose in the same forum for the value of the shares in his father's account and received a summary judgment in his favor for $88,806.20 (the value of the shares in the account plus interest at the rate of 9% per annum) as of August 6, 2019.

On August 31, 2018, while the state court litigation was proceeding, NCUA placed Melrose into involuntary liquidation and appointed itself the liquidating agent. On September 11, 2019, plaintiff filed a creditor claim with the NCUA, and pursued a share insurance claim. NCUA denied these claims, and plaintiff administratively appealed the denial of the share insurance claim. On March 8, 2021, the NCUA Board affirmed its earlier decision. Plaintiff's complaint alleges that he received the NCUA Board's final decision on March 22, 2021.

---

The NCUA plays that same role with regard to credit unions, but since credit union members (depositors) hold shares in the credit union, that insurance is referred to as "share insurance."

Plaintiff filed this action on May 25, 2021, seeking review of the NCUA's decision under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and enforcement of the State Court judgment through the Full Faith and Credit Act, 28 U.S.C. § 1738.[3]  In response, the NCUA has moved to dismiss the case, arguing that plaintiff's action had to be filed by May 22, 2021, so that it is three days too late.

## DISCUSSION

To maintain an action against NCUA for erroneously denying a share insurance claim, plaintiff must comply with the requirements outlined in the Financial Institutions Reform Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1781 *et seq.*  The statute provides for federal court review of, among other things, the NCUA's denial of insurance claims against financial institutions in liquidation, after exhaustion of an administrative claims process. 12 U.S.C. § 1787(d).  Specifically, section 1787(d)(4) states "any request for review of a final determination by the Board regarding any claim for insurance coverage shall be filed with the appropriate United States district court not later than 60 days after the date on which such determination is issued."  This is the same language that triggers the review period for insurance claims involving the FDIC as liquidator of banks.  See 12 U.S.C. § 1821(f)(5).  Other than through this claims process, "no court shall have jurisdiction over" claims seeking the credit union's assets or challenging its actions. Id. at § 1787(b)(13)(D).

Plaintiff's complaint alleges that the NCUA Board's final decision denying his appeal occurred on March 8, 2021, and was issued on March 22, 2021.  Additionally, the denial states

---

[3] Plaintiff purports to state a cause of action under the Full Faith and Credit Clause of Article IV of the Constitution, but that applies to the recognition of judicial proceedings between states.  See Sun Oil Co. v. Wortman, 486 U.S. 717, 722–24 (1988).

3

that it was sent by email on that same date.  That means that plaintiff commenced this action three days beyond the 60-day statute of limitations.

In response to the NCUA's calculation, plaintiff asserts two arguments.  First, he contends that the 60-day limitations period should have started to run on March 29, 2021, not March 22, 2021, because the NCUA's determination was not received by plaintiff's attorney (to whom it was addressed) until March 29, 2021.  Second, he argues that because the State Court action was commenced before NCUA placed Melrose into involuntary liquidation, NCUA is bound by the state court judgment in plaintiff's favor.

Plaintiff's complaint is inconsistent with his argument that he didn't receive notice of the denial until March 29th.  The complaint plainly alleges that "[t]he NCUA Board denied the Appeal by written decision dated March 8, 2021 but served on March 22, 2021."  In fact, plaintiff never claimed that he received notice on March 29th until after the NCUA moved to dismiss.  Even then, the only place plaintiff made that argument is in counsel's brief in opposition to NCUA's motion.  See Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009) ("[a]n attorney's unsworn statements in a brief are not evidence.").

In any event, the statute is based on the denial notice's *issuance*, not its *receipt*.  Compare 20 C.F.R. § 966(c) (appeal of denial of social security administrative claim can be challenged in federal court "with 60 days after the date *you received* the notice.") (emphasis added).  Thus, even if plaintiff received notice on March 29th, March 22nd was still the relevant date for purposes of the statute of limitations because that was when the notice was issued.  See, e.g., Erickson v. Fed. Deposit Ins. Corp., No. 09-cv-06111, 2010 WL 11596560, at *2 (C.D. Cal. Mar. 10, 2010) (the statute of limitations in 12 U.S.C. § 1821(f)(5) began to run on the date listed in a Receivership Certificate); Ulloa v. United States, No. 05-cv-124, 2005 WL 2739105, at *2

4

(N.D.N.Y. Oct. 24, 2005) (the statute of limitation for 26 U.S.C. § 6330(d)(1), which states a "person may, within 30 days of a determination under this section, appeal such determination," began on the day the determination was issued, not when it was received); see also McCune v. Commissioner of Internal Revenue, 115 T.C. 114, 117–118 (2000) (the statutory periods "cannot be extended by petitioner's unilateral action . . . in deciding when to pick up his mail.").

Plaintiff's second position is equally unavailing.  Section 1787(b)(13)(A) states that "[t]he Board shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Board as conservator or liquidating agent." 12 U.S.C. § 1787(b)(13)(A).  The State Court action in this case began prior to NCUA's appointment as Melrose's liquidator, but plaintiff didn't receive summary judgment until almost a year later.  A plain reading of § 1787(b)(13)(A) shows that NCUA is not bound by the State Court judgment because it was not issued, let alone final, when the NCUA became Melrose's liquidator.  Cf. Geri Zahn, Inc. V. Govaert, 25 F.3d 1539, 1545 (11th Cir. 1994) (bankruptcy court judgment is non-binding on the FDIC under 12 U.S.C.S. § 1821(d)(13)(A), which has language mirroring § 1787(b)(13)(A)).

## CONCLUSION

Defendant's motion to dismiss is granted.  The Clerk is directed to enter judgment, dismissing the complaint.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
       January 19, 2022